IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARY ANN C.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civ. No 3:20−cv−00296−CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

    Plaintiff Mary Ann C. seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for disability insurance and widow's insurance benefits. Full consent to magistrate jurisdiction was entered on March 9, 2020 (#5). For the reasons below, the Commissioner's decision is REVERSED and REMANDED for further proceedings to evaluate Plaintiff's visual acuities and resulting limitations.

## BACKGROUND[2]

    Plaintiff was born on June 17, 1965 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. She alleges she became unable to work in 2015 due to macular degeneration of the left eye, vision problems

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties, and any relations, in this case.

[2] The following recitation constitutes a summary of the pertinent evidence within the Administrative Record and does not reflect any independent finding of fact by the Court. Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 17.

Page 1 of 15 – OPINION and ORDER

of the right eye, sleep apnea, asthma, Graves Disease/thyroid problems, arthritis of the lower back, and restless leg syndrome.

On January 12, 2018, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. Plaintiff also protectively filed a Title II application for disabled widow's benefits on January 12, 2018. In both applications, Plaintiff alleged disability beginning January 1, 2015. The claim was denied initially on June 5, 2018, and upon reconsideration on July 23, 2018. Thereafter, Plaintiff filed a written request for hearing on August 21, 2018. She appeared and testified at a hearing held on August 16, 2019, in Portland, Oregon. During her hearing, Plaintiff amended her alleged onset date to August 15, 2016. Tr. 140-41.  The ALJ issued a decision finding Plaintiff not disabled on September 5, 2019.  Plaintiff requested review, and on December 18, 2019, the Appeals Council denied Plaintiff's request. Accordingly, the ALJ's decision became the final decision of the agency from which Plaintiff seeks review.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving

significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c);

>       416.960(c). If the claimant cannot perform such work, he or she is disabled.
>       *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021.

2. Plaintiff is the unmarried widow of the deceased insured worker and has attained the age of 50. She met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

3. The prescribed period ends on February 28, 2021.

4. Plaintiff has not engaged in substantial gainful activity since August 15, 2016, the alleged onset date.

5. Plaintiff has the following severe impairments: degenerative disc disease, obesity, bilateral macular degeneration / central serous with recent intraocular implant on the right for cataract.

6. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

7. Plaintiff has the residual functional capacity to perform light work, except she is further limited to no more than frequent stooping, crouching, crawling, kneeling, or climbing. Due to her vision loss, the Plaintiff would need to avoid unprotected heights, moving machinery, and similar hazards. She is unable to drive.

8. Plaintiff is unable to perform any past relevant work.

9. Plaintiff was born on June 17, 1965 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

10. Plaintiff has a limited education and is able to communicate in English.

11. Transferability of job skills is not material to the determination of disability because Plaintiff is "not disabled" whether or not she has transferable job skills.

12. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.

Consequently, the ALJ concluded that Plaintiff is not disabled as defined by the Social Security Act from August 15, 2016 through the date of the decision, September 5, 2019. Tr. 27.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v.*

*Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff presents the following issues:

1. Did the ALJ properly evaluate the medical opinion evidence?
2. Did the ALJ properly evaluate Plaintiff's subjective symptom testimony as to the progression of her vision impairment?

The Court finds that the ALJ did not properly evaluate the evidence regarding Plaintiff's vision impairment, including the medical opinion evidence and Plaintiff's subjective symptom testimony. The decision is reversed and remanded for further proceedings.

**I.    The ALJ failed to properly evaluate the medical opinions.**

The ALJ is responsible for resolving conflicts in the medical record. 20 C.F.R. § 404.1527; *Batson v. Comm' r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). For claims filed on or after March 27, 2017, the ALJ must evaluate medical source opinions or prior administrative medical findings using five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) "other factors," including familiarity with other evidence in the claim or understanding of disability program policies and requirements. 20 C.F.R. § 404.1520c(a), (c). Of these five factors, the "most important" factors" are supportability and consistency.

> **a.    The ALJ did not properly evaluate the opinion of Ian Penner, P.A.**

For claims filed on or after March 27, 2017, a licensed Physician Assistant is considered an "acceptable medical source" within his or her licensed scope of practice. 20 C.F.R. § 404.1502(a)(8).

Physician Assistant Ian Penner, acting as Plaintiff's primary care provider, offered an opinion on Plaintiff's functioning in August 2019. Tr. 711–14. Mr. Penner indicated that Plaintiff suffered moderate impairment in her ability to concentrate, persist, or maintain pace, which he attributed primarily to her vision loss. Tr. 713. He indicated marked impairment in her ability to adapt or manage herself, in that she has to rely on others for many of her everyday needs as a result of vision issues. *Id*. With specific reference to a vocational context, Mr. Penner indicated that Plaintiff's concentration would be impaired to a degree that would preclude even simple

work for an estimated 20% of a 40-hour work week; and that Plaintiff would be expected to miss 16 hours (the equivalent of two full workdays) or more per month from even a simple, routine job as a result of her symptoms. Tr. 714. Mr. Penner explained that these limitations were due to Plaintiff's inability to focus, "primarily" due to vision problems, with contribution from pain from her right elbow. Tr. 714.

      The ALJ found that Mr. Penner's opinion was not persuasive. Tr. 25. First, the ALJ noted that there were no records referencing nerve damage or COPD. Second, the ALJ noted that the right upper extremity problem was "recent, and [it] has not met the duration requirement." Third, the ALJ noted that Mr. Penner did not complete the physical portion of the questionnaire, but did fill out the paragraph B criteria, "relying on the claimant's physical symptoms to find mental limitations." Fourth, the ALJ noted that the record did not document persistent problems with fatigue, muscle spasm, dizziness, headaches, or shortness of breath. Fifth, the ALJ stated that "no explanation" was provided for the opinion that Plaintiff would be off task or miss work. Finally, the ALJ noted that the opinion was inconsistent with that of state agency consultants. *Id*.

      These reasons are not adequate to discount Mr. Penner's opinion as to Plaintiff's concentration and missed time at work. The first, second, and fourth reasons given above are not rationally related to Plaintiff's vision impairment and therefore are not adequate reasons to discount Mr. Penner's opinion regarding that impairment.

      The third reason given by the ALJ, that Mr. Penner improperly relied on Plaintiff's physical symptoms to find mental limitations is inadequate as well. While the ALJ reasonably found Plaintiff's mental impairments non-severe, there is no basis in the record or in logic for determining that physical impairments cannot cause mental limitations. SSA regulations specifically indicate that some medically determinable impairments "such as impairment(s) of

Page 8 of 15 – OPINION and ORDER

vision,… may cause limitations and restrictions which affect other work-related abilities." 20 C.F.R. § 404.1545(d); *see also* SSR 96-8p (symptoms such as pain may "cause a limitation that affects the individual's ability to meet the demands of occupations other than their strength demands (e.g., manipulation or concentration)"). Thus, the regulations allow for the possibility that an impairment in vision may affect a person's ability to perform activities normally associated with mental functioning, such as concentration and ability to adapt and manage oneself.  By rejecting Mr. Penner's opinion on this basis, the ALJ imposed a requirement that is unsupported by the regulations.

The ALJ's fifth concern was that "[n]o explanation" was provided for the opinion that Plaintiff would be off-task or miss work, and that her problems were "longstanding and did not interfere with her ability to work in the past." Tr. 25.  However, Mr. Penner did explain his opinion as to Plaintiff's concentration and absence from work, citing Plaintiff's "inability to focus due to low vision primarily, with contribution of constant pain from R elbow nerve issues." Tr 714.  He also noted moderate impairment in the ability to concentrate, persist, or maintain pace, identifying "vision loss" as the "primary driver" of this concern. Tr. 713.  As far as her ability to work in the past, the record supports the notion that Plaintiff's vision problems worsened after she stopped working. Tr. 499, 501, 520.

Finally, the ALJ determined that Mr. Penner's opinion was not consistent with that of the state agency consultants; this is not an adequate reason to discount the opinion. The state agency consultants' opinions were given in June and July 2018, mere months after Plaintiff's right eye surgery. Tr. 173, 186, 201, 213; *see* Tr. 591 (operative report from right eye lens implant, April 2018).  The state agency consultants were not privy to the reports of worsening visual acuity in 2019, nor the recommendation that Plaintiff undergo cataract surgery "when patient is ready."

Tr. 737, 745, 753, 759, 766. In particular, the record shows that the disease in Plaintiff's left eye was "reactivated" in December 2018, after her Avastin injection was withheld on the previous visit. Tr. 737. Thus, Mr. Penner's opinion was predicated on a greater volume of available data as to the progression of Plaintiff's eye disease. The ALJ's improper evaluation of Mr. Penner's opinion was an error.

> b. **The ALJ failed to properly evaluate the state agency opinions and translate their opinions of Plaintiff's visual impairment into concrete functional limitations.**

Both state agency consultants, Dr. Bernardo in June 2018 (Tr. 172, 185–86), and Dr. Johnson in July 2018 (Tr. 200, 212), indicated that Plaintiff's vision problems limited both her near and far acuity, and both noted that Plaintiff would be "unable to perform work that requires excellent vision." Tr. 172, 186, 200, 212. However, neither consultant offered any further specification on the degree of impairment to Plaintiff's near acuity, far acuity, or depth perception. Despite this lack of precision as to Plaintiff's limitations, the ALJ found these opinions persuasive. Tr. 25. Additionally, the ALJ failed to translate even the generalized impairment of "unable to perform work that requires excellent vision" into a specific occupational limitation reflected in the RFC. In fact, the ALJ failed to include any express limitation on near acuity, far acuity, or depth perception in the RFC.[3] This was an error.

The vision requirements of work in the national economy are reported in Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), which is a "primary resource" for vocational data. SSR 00-4p. In particular, the SCO measures the requirements for near acuity, far acuity, and depth perception on a scale of how often these

---

[3] The ALJ did include limitations on hazards and driving in the RFC. Tr. 22. Although these were intended to capture Plaintiff's visual limitations, the ALJ does not explain why these limitations are sufficient, and based on the record, the Court finds they are not.

Page 10 of 15 – OPINION and ORDER

activities are required – ranging from never ("N") to constantly ("C"). The SCO does not measure or define what "excellent vision" would mean.

The ALJ's error is harmful, because the occupations identified at step five all bear significant visual components. The ALJ based his step five finding on vocational testimony that a person with Plaintiff's RFC could work as a collator (DOT #653.687-010), marker (DOT #209.587-034), or garment sorter (DOT #222.687-014). Tr. 27; *see* Tr. 157. But all three of these occupations require frequent ("F") near acuity. SCO at 05.09.03 (marker), 06.03.02 (garment sorter), 07.07.03 (collator). Thus, a person who could only perform these activities on an occasional basis would be precluded from these occupations.

Although the state agency consultants did not state the degree of limitation, they did indicate that Plaintiff's near acuity was limited, and the ALJ stated that this was consistent with the record, including Plaintiff's treatment for visual impairment. Tr. 25. Having agreed that Plaintiff's near acuity was impaired, the ALJ had an obligation to determine the degree of impairment, as part of his independent duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *see generally* 42 U.S.C. § 423(d)(5)(B), 20 C.F.R. § 404.1512(b).

The ALJ erred by improperly discounting the opinion of Mr. Penner, but even if the ALJ adequately discounted his opinion and relied only on the state agency consultants, he had an obligation to consider Plaintiff's well documented vision impairments and determine her specific degree of limitation.

**II.    The ALJ did not properly evaluate Plaintiff's subjective symptom testimony.**

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective

medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Reddick*, 157 F.3d at 724; *Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

Plaintiff testified that her vision problems grew worse after her prior work ended for unrelated reasons. Tr. 145. She testified that her right eye improved after surgery, and she was able to resume reading. Tr. 148. However, she testified that she could see very little out of her left eye. Tr. 149. She specifically stated that reading too long caused eye fatigue and double vision. Tr. 150.

The ALJ discounted Plaintiff's testimony regarding the severity of her vision problems because Plaintiff stopped working for reasons unrelated to the severity of her impairments, and because the testimony was inconsistent with her activities of daily living, and he asserted that his RFC finding adequately accounted for her vision impairment. In addressing Plaintiff's visual impairments, the ALJ discussed the medical record, noting some improvement in the right eye after lens implant surgery, and noting that Plaintiff had not yet followed up on the advice to consider cataract surgery on the left eye. Tr. 24. These were not adequate reasons to discount Plaintiff's testimony.

First, while job loss unrelated to disability is a valid reason to discount a Plaintiff's symptom testimony, *see Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010), here the ALJ did not address Plaintiff's specific testimony, supported by the medical evidence, that her visual impairments worsened after her prior work ended. Similarly, while there is evidence that Plaintiff's activities on or around her alleged amended onset date, and shortly thereafter, were inconsistent with the severity of her symptom testimony, this again fails to consider the increasing severity of her symptoms over time. The ALJ acknowledged that by the time of her hearing in August 2019 Plaintiff felt more limited, but he found that while her activities declined over time, "this appears volitional as the medical record does not provide a basis for the significant reduction she describes." Tr. 23. This conclusion is contradicted by the opinion of Ian Penner, and by the opinions of the state agency consultants, who found Plaintiff's near and far acuity were limited, as discussed above.

Second, as discussed in the section above, the ALJ did not adequately account for Plaintiff's vision impairment in the RFC, even without her subjective symptom testimony.

Third, though the ALJ indicated that Plaintiff had not "followed through" on cataract surgery, which alludes to a possible failure to pursue treatment, the record undermines this assertion. Importantly, the recommendation that Plaintiff "consider cataract surgery on the left eye" was in March 2019, just a few months prior to the ALJ's hearing. Tr. 766; *see* Tr. 136. The most recent medical records reviewed by the ALJ were from early August 2019, again mere months after this recommendation. *See* Tr. 32 (listing medical evidence). Nothing in the record suggest that Plaintiff was refusing to proceed with surgery.

Additionally, the specific recommendation was to "[c]onsider cataract surgery when patient is ready." Tr. 766. Primary care records from the next month indicate that Plaintiff was "down to the wire on moving," indicating that she was having housing instability. Tr. 774. The ALJ noted in his decision that Plaintiff lost her house in June 2019 and moved in with a friend. Tr. 23; *see* Tr. 144. This context further undermines the ALJ's implied conclusion that Plaintiff was refusing to follow through with recommended treatment.

This error is harmful, because the ALJ failed to include any limits in the RFC reflecting Plaintiff's double vision or inability to read for prolonged periods. As previously noted, the occupations identified at step five require near acuity on a frequent basis. An ALJ that credited Plaintiff's testimony would likely have concluded that she could not persist in such occupations. At minimum, an ALJ that properly credited Plaintiff's testimony would have looked more favorably on Mr. Penner's opinion, which was also predication on vision limitations.

## REMAND

The standards for an immediate award of benefits have been repeatedly discussed by the Ninth Circuit, laid out in detail in *Brown-Hunter v. Colvin*, 806 F. 3d 487 (9th Cir. 2015); *Garrison v. Colvin*, 759 F. 3d 995, 1016 (9th Cir. 2014); *Treichler v. Commissioner of Social*

*Sec. Admin.*, 775 F. 3d 1090 (9th Cir. 2014); and *Varney v. Sec'y HHS*, 859 F.2d 1396 (9th Cir. 1988). The "credit as true" rule for an award of benefits was succinctly set forth in *Garrison* as follows:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

759 F.3d at 1020.

The Court finds that the credit as true rule has not been met in this case. First, the record has not been fully developed because the ALJ failed to determine Plaintiff's precise visual acuities and translate them into concrete limitations in the RFC. Second, while the occupations selected in Step Five are likely inappropriate for Plaintiff's vision impairments, there may be other occupations in the national economy that she is capable of performing even with her limited visual acuities. Therefore, this case should be remanded back to the ALJ for further proceedings.

## ORDER

Based on the foregoing, the decision of the Commissioner is REVERSED and REMANDED for further proceedings. On remand, the ALJ shall reconsider the medical opinions, including from Mr. Ian Penner and the state agency consultants, and the subjective symptom testimony, and appropriately determine Plaintiff's precise visual limitations for purposes of the RFC.

It is so ORDERED and DATED this __26__ day of April, 2021.

                                                              _____
                                                              MARK D. CLARKE
                                                              United States Magistrate Judge